River Lake Estates, Inc. v. Commissioner.
River Lake Estates, Inc. v. Commissioner
Docket No. 73585. TC Memo. 1959-127.
United States Tax Court
T.C. Memo 1959-127; 1959 Tax Ct. Memo LEXIS 121; 18 T.C.M. (CCH) 562; T.C.M. (RIA) 59127; June 19, 1959
*121 J. B. Fisher, Esq., Kanawha Valley Building, Charleston, W. Va., for the petitioner. Bart A. Brown, Jr., Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: The respondent determined deficiencies in income tax of the petitioner for the taxable years ended March 31, 1956, and March 31, 1957, in the amounts of $2,395.60 and $689.08, respectively. Petitioner claims an overpayment of tax for the year ended March 31, 1957. The only issue for decision is whether respondent erred in disallowing the deduction of personal service compensation payments to the extent that such payments exceeded $27,649.68 for the year ended March 31, 1956, and $22,521.57 for the year ended March 31, 1957. Findings of Fact Petitioner is a corporation organized under the laws of West Virginia with its principal office at St. Albans, West Virginia. It filed its income tax returns for the taxable years ended March 31, 1956, and March 31, 1957, with the district director of internal revenue at Parkersburg, West Virginia. Since its inception, petitioner has been engaged in the business of developing a tract of land near St. Albans as a residential subdivision *122 and selling lots therefrom. Prior to August 1953, J. R. Aliff was the owner of the tract of land in question. Sometime in 1953, he met Charles L. Walk, a real estate developer and promoter, with whom he discussed the possibility of developing the tract. In August 1953, Aliff sold Walk an undivided one-half interest in the tract for $22,500, and the two of them formed a partnership, doing business as River Lake Estates, to develop the land. At the time the partnership was formed, it was agreed that each year Walk would be paid for his services 20 per cent of the amounts collected from sales and Aliff would be paid for his services 10 per cent of the same amounts. Remaining profits were to be shared equally by Walk and Aliff. Walk's larger commission was based, in part, on the fact that he invested his money in the project and was uncertain as to whether he would make a return on his money. In addition, Walk was an experienced real estate developer, which Aliff was not. Later, Walk and Aliff decided to incorporate River Lake Estates, and petitioner was in fact incorporated on April 6, 1954, beginning business July 1, 1954. On that date, Walk and Aliff transferred all their right, *123 title, and interest in the tract of land owned jointly by them to the petitioner. Walk and Aliff each were issued 50 per cent of petitioner's capital stock, and there has been no change since in stock ownership. The original compensation agreement entered into by Walk and Aliff was continued in effect when petitioner commenced business. However, sometime in 1954 or 1955, Walk decided that he was entitled to additional compensation, and petitioner agreed to pay him in addition to his commission of 20 per cent of sales the amount of $22,500 payable at the rate of $7,500 a year over a three-year period. On its income tax returns for the taxable years ended March 31, 1956, and March 31, 1957, petitioner deducted the following amounts as compensation for the services of Walk and Aliff: Taxable
Year Ended
Amounts Deducted
March 31
C. L. Walk
J. R. Aliff
1956
$26,104.35
$9,045.33
1957
15,014.38
7,507.19 Of the amount deducted by petitioner as compensation for the services of Walk for the taxable year ended March 31, 1956, $18,604.35 represents 20 per cent of the amounts collected by petitioner during the year from the sale of real estate and the remaining *124 $7,500 represents one-third of the additional compensation of $22,500 which petitioner agreed to pay Walk. The amount deducted by petitioner as compensation for the services of Walk for the taxable year ended March 31, 1957, represents 20 per cent of the amounts collected by petitioner during the year from the sale of real estate. Most of the amounts deducted by petitioner as compensation for the services of Walk and Aliff were not paid to them. The unpaid amounts were carried on petitioner's books and records as accounts payable. The balances of these accounts on March 31, 1955, March 31, 1956, and March 31, 1957, were as follows: March 31
C. L. Walk
J. R. Aliff
1955
$ 5,926.44
$ 3,388.22
1956
29,582.41
12,433.55
1957
34,070.05
14,639.38
Petitioner's total receipts, gross income, and net income before taxes as shown on its income tax returns for the taxable years ended March 31, 1956, and March 31, 1957, were as follows: Taxable
Net
Year Ended
Total
Gross
Income Be-
March 31
Receipts
Income
fore Taxes
1956
$99,530.86
$52,637.05
$ 8,150.78
1957
82,233.93
53,131.12
13,611.23
Petitioner's earned surplus as *125 shown by its books and records on March 31, 1956, and March 31, 1957, was as follows: March 31
Earned Surplus
1956
$13,886.52
1957
23,402.66
Through March 31, 1957, petitioner had never declared or paid a dividend. The development of River Lake Estates which included the surveying of the land, the laying out and platting of individual lots, the grading and surfacing of roads, the clearing of the land, and the building of a lake, was begun in 1953; most of this work was completed in 1954 and 1955. Walk supervised this work. In 1955, petitioner built a sewer system and, at an unidentified time, petitioner ran a water line and a gas line onto its properties. Walk employed the contractors who did this work. Petitioner employed a certified public accountant during the taxable years ended March 31, 1956, and March 31, 1957, who maintained and retained all corporate books and records except certain original entry books of receipts which were kept by Aliff. During the taxable years ended March 31, 1956, and March 31, 1957, Aliff kept certain original entry books of receipts for petitioner, wrote checks for petitioner, and had custody of legal documents involving *126 petitioner. Beginning in late 1955, when petitioner's sewerage system began operating, Aliff billed and collected the sewerage charges and regularly checked the sewer system to make sure it met health department standards. During the years 1955, 1956, and 1957, Walk received compensation from the following sources and in the amounts set out in addition to that received as an officer of petitioner: Source
1955
1956
1957
Cunningham
Memorial
Park
$12,045.00
$12,122.50
$12,083.00
Your Builders,
Inc.
2,219.46
6,492.50
12,050.00
Commissions on
real estate
sales
2,300.00
4,475.00 Also, Walk and his wife conducted a profitable real estate sales and rental business during these years. Walk handled the real estate sales personally. Aliff is not a real estate promoter. Prior to March 1955 Aliff was employed by the State of West Virginia as a clerk in the House of Delegates and could not devote much time to River Lake Estates. In 1955, Aliff earned $5,812.50 as a wine salesman for L. N. ReNault & Sons, Inc. In 1956, Aliff earned $13,920.37 selling wines and real estate on a commission basis. In 1957, Aliff earned $2,287.50 as a salesman for St. *127 George Winery. Respondent determined that $7,500 of the amount deducted by petitioner on its income tax return for the taxable year ended March 31, 1956, as compensation for the services of Walk and Aliff is in excess of reasonable commissions. In its petition, petitioner claimed that it is entitled to deduct $7,500 in addition to the amount deducted on its income tax return as compensation for the services of Walk in computing its income tax liability for the taxable year ended March 31, 1957. In the course of his carrying out of petitioner's plans for the improvement of its property, Walk devoted long hours, and substantially all his time during the summer months of the two years involved. Walk's compensation, as accrued by petitioner, was not in excess of charges for similar services at the time in the St. Albans area. The total salaries claimed by petitioner for Walk's services were ordinary, necessary, and reasonable during both the taxable years ended March 31, 1956, and March 31, 1957. Opinion The amount of compensation here in dispute is $7,500 in each of the years ended March 31, 1956, and March 31, 1957. The amount in question was deducted by petitioner on its *128 1956 return. With respect to the second of the two years, the $7,500 was not deducted on petitioner's return but was claimed as a deduction for the first time in its petition here. In view of the fact that respondent determined a deficiency with respect to that year and the year is not otherwise barred, the claim of an overpayment is properly before us. As we have found, most of the compensation of Walk and Aliff was not actually paid to them but was simply credited to them on petitioner's books. Since, aside from partial disallowance as unreasonable, respondent has not questioned that these amounts of compensation were a proper charge in the years involved even though only credited rather than actually paid, we assume that petitioner was an accrual method taxpayer. Moreover, the arrangement whereby Walk was to receive the additional $7,500 per year for three years was based upon an agreement whose existence has not been questioned so that the payment of the $7,500 was a bona fide obligation of petitioner. So far as the record before us discloses, we know only the balance shown on the books of petitioner as accounts payable to Walk and Aliff as of the close of the years involved, *129 but we do not know what amounts petitioner actually carried on its books as compensation payable for their services. However, while the presence or absence of such book entries may be evidence of the existence or nonexistence of the asserted obligation, it is not conclusive in this regard. Here, where the evidence clearly establishes the existence of the obligation and that fact is not disputed, the $7,500 item was properly accruable as an expense in both years, whether or not actually entered on the books and even though not actually deducted in the second year, and is properly claimed as a deduction or overpayment, as the case may be, assuming the amount is not unreasonable. What constitutes reasonable compensation is essentially a question of fact, and the burden is on the petitioner to prove that the respondent's determination is incorrect. While recognizing that the question of reasonableness of compensation in a given case is seldom entirely free from doubt, involving as it does a matter of business judgment, we are satisfied here that the petitioner has carried its burden. Considering the entire record, including the evidence of Walk's experience, his services to petitioner, *130 and the testimony of others experienced in the real estate field in the area in which petitioner's business was located, we are of the opinion that the total salaries credited by petitioner for Walk's services were reasonable during the years involved. This being the case, the respondent erred in determining a deficiency for the year ended March 31, 1956, and the petitioner is entitled to a refund with respect to the claimed overpayment for the year ended March 31, 1957. Decision will be entered under Rule 50.